UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEBRA ANN JACKSON,

    Plaintiff,

  v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

No. 2:13-CV-01097-CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born August 28, 1957, applied on September 22, 2010 for DIB and SSI, alleging disability beginning December 1, 2009. Administrative Transcript ("AT") 147-157. Plaintiff alleged she was unable to work due to diabetes and hypertension. AT 173. In a decision dated

/////

/////

1

August 21, 2012, the ALJ determined that plaintiff was not disabled.[1]  AT 32.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since December 1, 2009, alleged onset date.
>
> 3. The claimant has the following severe impairments:  obesity and diabetes mellitus.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work . . . .  She can occasionally climb, balance, stoop, kneel, crouch and crawl.  As a precautionary measure, the claimant should avoid working at height or with hazardous machinery.
>
> 6. The claimant is capable of performing past relevant work, as explained below.  This work does not require the performance of work related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2009, through the date of this decision.

AT 24-31.

ISSUES PRESENTED

Plaintiff argues that new and material evidence demonstrates plaintiff's medical condition is worsening, the ALJ improperly evaluated the medical evidence, the ALJ improperly discredited her testimony and a third-party report, and the ALJ posed an incomplete hypothetical question to the vocational expert.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

/////

/////

1    The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

   A.   New Evidence Submitted to Appeals Council

   Plaintiff submitted additional medical records from Community Medical Centers Vacaville dated May 16, 2012 through July 26, 2012 and from Solano County Health and Social Services dated June 21, 2012 along with her request to the Appeals Council for review of the ALJ's decision.  AT 6, 628-632.  Plaintiff contends that this evidence shows plaintiff's medical condition is worsening.  The Appeals Council considered this evidence in denying plaintiff's request for review and made it part of the administrative record.[2]  AT 1-2.  Accordingly, this court will review the ALJ's decision under the substantial evidence standard with due consideration of these treatment records.  See Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (where plaintiff submitted additional materials to the Appeals Council in requesting review of the ALJ's decision, court may properly consider the additional materials because the Appeals Council addressed them in the context of denying plaintiff's request for review); see also Ramirez

---

[2] The Appeals Council also looked at medical records dated October 17, 2012 through December 17, 2012.  AT 2.  Because these records post date the ALJ's decision, they were not made a part of the administrative record.  As noted in the decision of the Appeals Council, this evidence was returned to plaintiff so that it could be used in support of a new claim for disability for a period commencing after the date of the ALJ's decision.  AT 2.  Without reference to the administrative record, plaintiff asserts that her condition is deteriorating and that she has been diagnosed with additional ailments.  The additional records do not support plaintiff's assertion and plaintiff fails to explain how any additional diagnosed conditions presented any functional impairments.

4

v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993) (noting that where the Appeals Council declined to review the decision of the ALJ after examining the entire record, including new material, court considers both the ALJ's decision and the additional materials submitted to the Appeals Council); Brewes v. Comm'r Soc. Sec. Admin., 682 F.3d 1157, 1159-60 (9th Cir. 2012).

### B. Medical Evidence

#### 1. Step-Two Severity Analysis

Plaintiff contends the ALJ improperly assessed the severity of her impairments and failed to consider all of them in combination. An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Yuckert, 482 U.S. at 137. "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund, 253 F.3d at 1158. Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523. At step two, the burden is on plaintiff to demonstrate severity. See Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

Plaintiff argues the ALJ failed to recognize as severe her impairments resulting from anemia and chronic kidney disease. As an initial matter, the ALJ found that plaintiff had severe impairments of diabetes mellitus and obesity and thus plaintiff satisfies the *de minimus* screening device. AT 24. Moreover, the ALJ did consider plaintiff's anemia and chronic kidney disease in the sequential evaluation, determining that plaintiff did not meet or equal the listings for renal function and anemia at step three:

> Listing 6.02 requires impairment of renal function due to any chronic renal disease that has lasted or can be expected to last for a continuous period of at least twelve months. **With: (A)** chronic hemodialysis or peritoneal dialysis (*see* 6.00E1); **or (B)** kidney transplantation; **or (C)** persistent elevation of serum creatinine to four milligrams per deciliter (dL)(100 ml) or greater or reduction of creatinine clearance to twenty milliliters per minute or less, over at least three month, **with one** of the following: **(1)** renal osteodystrophy (*see* 6.00E3) manifested by severe bone pain and

> appropriate medically acceptable imaging demonstrating abnormalities such as osteitis fibrosa, significant osteoporosis, osteomalacia, or pathologic fractures; **or (2)** persistent motor or sensory neuropathy (*see* 6.00E4); **or (3)** persistent fluid overload syndrome **with**: **a.** diastolic hypertension greater than or equal to diastolic blood pressure of 110 mm Hg; or **(4)** persistent anorexia with weight loss determined by body mass index (BMI) of less than 18.0, calculated on at least two evaluations at least thirty days apart within a consecutive six-month period (*see* 5.00G2). The evidence of record does not support a meet or equal listing 6.02.
>
> Regarding anemia, to meeting listing 7.02, the medical evidence of record should contain findings of hematocrit persisting at thirty per cent or less due to any cause, **with either (A)** a requirement of one or more blood transfusions on an average of at least once every two months; **or (B)** an evaluation of the resulting impairment under criteria for the affected body system. There is not such evidence in the record.

AT 25-26.

Furthermore, the record does not support plaintiff's position. As the ALJ found, there was insufficient evidence to find that plaintiff's anemia more than minimally affected her ability to perform basic work functions or met the durational requirement. AT 25. In June 2012, Dr. Lopez performed a physical examination of plaintiff that revealed normal results. AT 463-65. During that examination, Dr. Lopez concluded that plaintiff was "asymptomatic from her mild anemia." AT 463. As to plaintiff's chronic kidney disease, Dr. Ong diagnosed plaintiff with stage III chronic kidney disease in May 2011. AT 405. In November 2011, Dr. Ong examined plaintiff again and noted that plaintiff felt well. AT 401. In March 2012, Dr. Ong examined plaintiff again and noted that plaintiff felt well and that her chronic kidney disease was "stable." AT 400.

As the record demonstrates, the ALJ considered "[a]ll impairments regardless of severity," including plaintiff's anemia and chronic kidney disease. AT 25. There was no error in the step-two severity analysis.

### 2. Treating Physician

Plaintiff contends the ALJ failed to give proper weight to the opinion of Dr. Kam Chan. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester, 81 F.3d at 830. Ordinarily, more weight is

/////

6

given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Dr. Chan was a treating physician with whom plaintiff had regular visits. AT 57. In July 2012, Dr. Chan provided a medical source statement on plaintiff's behalf opining that plaintiff could lift five to ten pounds on an occasional basis and could lift five pounds on a frequent basis. AT 626. In support of this conclusion, Dr. Chan noted that plaintiff had a 20% reduced grip strength. AT 626. Dr. Chan further opined that plaintiff could stand and/or walk for four hours in an eight-hour day, doing so continuously for two hours and could sit for six hours in an eight-hour day, doing so continuously for one hour. AT 626. In support of this conclusion, Dr. Chan cited plaintiff's lumbar spine tenderness as contributing to plaintiff's physical limitations. AT 626. He also asserted that plaintiff could occasionally climb, kneel, crouch, stoop bend at the waist, and crawl. AT 626. Dr. Chan also concluded that plaintiff would miss four days of work per month as the result of her impairments, without providing any support for this conclusion.

AT 627.  The ALJ noted that Dr. Chan appeared to rely heavily on plaintiff's subjective report of symptoms and limitations, which the ALJ properly discredited, as more fully discussed below.  AT 29.  Ultimately, Dr. Chan's prognosis of plaintiff was fair.  AT 625.

The ALJ found that Dr. Chan's opinion was conclusory and not supported by the evidence.  AT 29.  As the ALJ noted, the asserted manipulative limitations were inconsistent with the opinion of Dr. Brimmer, who found no manipulative limitations.  AT 280-81, 627.  Also, as the ALJ noted, plaintiff admitted that she smokes daily, cooks for herself and her mother, does the laundry and drives.  The ALJ found these activities to be inconsistent with the manipulative limitations assessed by Dr. Chan.  AT 29.  In light of the contradictory record medical opinions and lack of support in the record, the ALJ properly gave little weight to Dr. Chan's medical opinion.  AT 29.

          3.  Residual Functional Capacity ("RFC")

The ALJ concluded that plaintiff has the RFC to perform light work, she can occasionally climb, balance, stoop, kneel, crouch and crawl, and she should avoid working at height and with hazardous machinery.  Plaintiff contends that the ALJ's assessment of plaintiff's residual functional capacity is not supported by substantial evidence.  Specifically, plaintiff contends that the medical opinion of Dr. Brimmer cannot constitute substantial evidence to support the ALJ's RFC assessment because Dr. Brimmer did not have copies of plaintiff's medical records to review in formulating her opinion.  Plaintiff argues that, as a result, the only examining opinion is that of Dr. Chan, and, therefore the ALJ's RFC is not supported by substantial evidence to the extent it contradicts Dr. Chan's opinion.  In determining a claimant's RFC, an ALJ must assess all the evidence to determine what capacity the claimant has for work despite her impairments.  See 20 C.F.R. §§ 404.1545(a), 416.945(a).  The court will affirm the ALJ's determination of plaintiff's RFC if the ALJ applied the proper legal standard and the decision is supported by substantial evidence.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).  An examining physician's opinion alone constitutes substantial evidence if it rests on that physician's own independent examination.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

/////

In making the RFC determination, the ALJ took into account those limitations for which there was support in the record, including, to varying degrees, the medical opinions of Drs. Chan, Brimmer, Payne, Bayar, Cody, Orvell and Ong. AT 26-30. As noted above, the ALJ discredited Dr. Chan's opinion because it was contradicted by other medical opinions and lacked support in the record. AT 29. However, the ALJ's RFC determination is consistent with Dr. Chan's opinion as to plaintiff's ability to climb, stoop, kneel, crouch and crawl. AT 26, 626.

In November 2011, Dr. Brimmer consultatively examined plaintiff. In that visit, plaintiff complained that her medications made her feel nauseous and caused her to vomit. AT 277. Dr. Brimmer diagnosed plaintiff with nausea and vomiting, possibly related to plaintiff's medications, type 2 diabetes, high blood pressure, high cholesterol, and possible kidney impairment, although she did not have any data on plaintiff's kidney disease. AT 280-81. Dr. Brimmer opined that plaintiff had no limitations for standing, walking, or sitting in the absence of any significant, objective abnormalities in her physical exam. AT 281. The ALJ gave Dr. Brimmer only partial weight noting that Dr. Brimmer did not give reasonable consideration to plaintiff's self-reported limitations. AT 27-28. Plaintiff contends that the ALJ erred in giving any weight to Dr. Brimmer's opinion because Dr. Brimmer did not have copies of plaintiff's medical records in developing her opinion. To the contrary, Dr. Brimmer's opinion constitutes substantial evidence because she performed her own examination of plaintiff and based her opinion on her own independent clinical findings from that examination. See Tonapetyan, 242 F.3d at 1149.

The ALJ accorded reduced weight to Drs. Payne and Bayar, two state agency consultants who provided opinions in 2011. AT 28. Both concluded that plaintiff had no severe impairments. AT 284, 335. The ALJ found that the evidence supports a finding of severe impairments, in particular, plaintiff's diabetes and obesity. AT 28. Accordingly, the ALJ did not err in giving reduced weight to the opinions of Dr. Payne and Dr. Bayar.

As to Drs. Cody and Orvell, the ALJ accorded their opinions little weight because they were conclusory, not supported by the record, and were inconsistent with the opinions of Dr. Brimmer, the state agency consultants, and Dr. Chan. AT 28. In July 2011, Dr. Cody completed a one-page disability report diagnosing plaintiff with diabetes and kidney failure, indicating that

1  plaintiff was totally and permanently disabled. AT 352. Dr. Orvell also concluded that plaintiff
2  was disabled, noting that he did not know plaintiff at all but agreed with Dr. Cody after reviewing
3  Dr. Cody's notes. AT 540, 582. An ALJ need not accept the opinion of any physician, including
4  a treating physician if it is conclusory or minimally supported. See Meanel, 172 F.3d at 1113. As
5  such, the ALJ did not err in giving little weight to the conclusory opinions of Dr. Cody and Dr.
6  Orvell.
7       As further discussed below, the ALJ also factored in the residual functional capacity of
8  plaintiff's subjective complaints to the extent those complaints were not discredited. AT 29. In
9  particular, the ALJ found that plaintiff's medically determinable impairments could reasonably
10 expect to cause some of the alleged symptoms but plaintiff's statements concerning the intensity,
11 persistence and limiting effects of those symptoms are credible to the extent they are inconsistent
12 with the RFC. AT 29. There was no error in the ALJ's assessment of plaintiff's residual
13 functional capacity.
14       C.  Plaintiff's Credibility
15       Plaintiff further contends that the ALJ failed to provide sufficient reasons for discrediting
16 plaintiff's subjective complaints. The ALJ determines whether a disability applicant is credible,
17 and the court defers to the ALJ's discretion if the ALJ used the proper process and provided
18 proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is
19 critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871,
20 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring
21 explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").
22       In evaluating whether subjective complaints are credible, the ALJ should first consider
23 objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341,
24 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ
25 then may consider the nature of the symptoms alleged, including aggravating factors, medication,
26 treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the
27 applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent
28 testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment, and (3) the applicant's daily activities. Smolen, 80 F.3d at 1284; see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third-party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff reported that she was unable to work due to diabetes and hypertension. AT 173. At the hearing before the ALJ, plaintiff testified that she could not be employed because she felt nauseated, fatigued and weak. AT 62. The ALJ found plaintiff's statements concerning the intensity, persistence and limiting effects of plaintiff's symptoms not credible for several reasons. AT 29. The ALJ considered that plaintiff's daily activities—she could take care of her own personal care, cook, do the laundry and drive—are inconsistent with her allegations of disabling impairments. AT 29, 62-65, 193-94. The ALJ also considered that the type of medical treatment plaintiff received was not of the type that one would expect for a totally disabled individual. AT 29. Particularly, the record reflects that plaintiff received minimal treatment for her diabetes and hypertension and her other medical conditions had been successfully treated without significant impact on her functioning or daily activities. AT 29, 281 (Dr. Brimmer's opinion concluding that plaintiff had no physical limitations), 400-01 (Dr. Ong's opinion that plaintiff's chronic kidney disease was stable), 463-65 (Dr. Lopez's opinion that plaintiff was "asymptomatic from her mild anemia"). The factors considered by the ALJ in discrediting plaintiff are valid and supported by the record.

D.  Third-Party Report

Plaintiff asserts that the ALJ failed to properly evaluate Ms. Wanda Walton's third-party function report. AT 21. "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nyguen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919; see also Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006) (where ALJ fails to properly discuss competent lay testimony favorable to plaintiff, court cannot consider error to be harmless unless it can confidently conclude no reasonable ALJ, when fully crediting testimony, could have reached different disability determination). "If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009)).

In her report, Ms. Walton indicated that she had spent time shopping, going to appointments and out to dinner with plaintiff. AT 249. She also observed that since plaintiff "found out she was permanently disabled," plaintiff would stare at the wall or out the window in a daze. AT 249. Ms. Walton indicated that plaintiff did not have any problems with personal care. AT 250. The ALJ included these statements in support of the ALJ's RFC finding. AT 29.

Ms. Walton also stated that plaintiff does not prepare her own meals, goes outside three times a week and either walks or rides in a car when traveling. AT 251. However, plaintiff testified that she cooks for herself and her mother, and drives a car on a daily basis. AT 62, 64. There was no error in disregarding laywitness statements which were inconsistent with plaintiff's own testimony that she was not as limited as the laywitness asserted. Ms. Walton also stated that plaintiff could walk short distances and appeared to be in constant pain when walking, bending, and standing. AT 253. These observations are similar to plaintiff's subjective complaints which

1    the ALJ properly discredited.  AT 29.  There was no error in the ALJ's consideration of the

2    laywitness evidence.

3          E.   Hypothetical Question to Vocational Expert

4          Plaintiff asserts the ALJ posed an incomplete hypothetical question to the vocational

5    expert.  As an initial matter, the ALJ, at step four, determined that plaintiff could perform her past

6    work as a lab sample carrier, a meter reader, an order puller, a water-treatment plant assistant, a

7    driver, and a file clerk.  AT 30.  Plaintiff's impairments must prevent her from performing past

8    relevant work.  20 C.F.R. § 404.1520(f).  If she can still do this kind of work, plaintiff will be

9    found not disabled.  Id.  There is no need to consult a vocational expert if there is reliable

10   evidence of plaintiff's ability to perform her past work.  See Hall v. Sec'y of Health & Human

11   Servs., 602 F.2d 1372, 1377.

12         In finding that plaintiff could perform her past work, the ALJ utilized the *Dictionary of*

13   *Occupational Titles* (DOT),[3] which characterized plaintiff's past work as exertionally light.  AT

14   30.  The past relevant work that included exertionally medium work plaintiff performed at the

15   light level.  AT 30.  As reported by plaintiff, none of these jobs, either as she performed them or

16   as characterized by the DOT, required plaintiff to lift more than 20 pounds occasionally or lift

17   more than 10 pounds frequently.  (AT 179-188).  The ALJ compared plaintiff's RFC of light

18   work to the physical and mental demands of plaintiff's past work and concluded that plaintiff

19   could perform her past relevant work as a lab sample carrier, a meter reader, a driver and file

20   clerk as she performed them and as characterized by the DOT, a home attendant as she performed

21   it, and an order puller as per the DOT characterization.  AT 30.  Because the ALJ's finding that

22   plaintiff could perform her past relevant work is supported by substantial evidence in the record,

23   the ALJ was not required to consult a vocational expert.

24   /////

---

[3] The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991), ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements.   The DOT is a primary source of reliable job information for the Commissioner.  20 C.F.R. § 404.1566(d)(1).

1    Assuming arguendo that vocational expert testimony was required, the court finds no error in the ALJ's questioning of the vocational expert. Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. Magallanes, 881 F.2d at 756. However, the ALJ need only include the limitations that she finds to exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. DeLore v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Plaintiff contends that the ALJ failed to include all of her limitations in the hypothetical posed to the vocational expert. In posing the hypothetical, the ALJ considered all of plaintiff's limitations that were supported by substantial evidence in the record. AT 75. The ALJ's hypothetical question was consistent with the ALJ's finding that plaintiff could perform light work. AT 26, 74-75. The ALJ was not required to include any additional limitations alleged by plaintiff.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 20) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 24) is granted; and

3. Judgment is entered for the Commissioner.

Dated: June 9, 2014

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

10/4 jackson.ss